# EXHIBIT 3

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BOEHRINGER INGELHEIM, a corporation;  McKESSON CORPORATION, a Delaware corporation; and DOES 1-50,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOHN AUSTIN, as successor-in-interest to LISA AUSTIN and as an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):*  SAN FRANCISCO COUNTY SUPERIOR COURT <br> 400 MCALLISTER ST.,SAN FRANCISCO, CA 94102 | CASE NUMBER: *(Número del Caso):* <br> **CGC-20-587448** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JOHN AUSTIN, IN PRO PER, 6537 KNOTT AVE., EL CERRITO, CA 94530, Phone: 510-508-3138

| DATE: <br> *(Fecha)* | NOV 0 2 2020 | **Clerk of the Court** | Clerk, by <br> *(Secretario)* | | , Deputy <br> *(Adjunto)* |

ANGELICA SUNGA

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010).)*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100  [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> *www.courts.ca.gov* |

1  JOHN AUSTIN
   6537 KNOTT AVE.
2  EL CERRITO, CA 94530
   Phone: 510-508-3138
3  Email:jaustins44@gmail.com

4  IN PRO PER

**F I L E D**
Superior Court of California
County of San Francisco

NOV 02 2020

CLERK OF THE COURT
BY: _____
ANGELICA SUNGA   Deputy Clerk

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN FRANCISCO COUNTY**

**UNLIMITED JURISDICTION**

| | |
|---|---|
| JOHN AUSTIN, as successor-in-interest to LISA AUSTIN and as an individual, | ) CASE NO: **CGC-20-587448** ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES;** ) **DEMAND FOR JURY TRIAL** ) |
| vs. | ) ) **1. STRICT PRODUCTS** |
| BOEHRINGER INGELHEIM, a corporation; McKESSON CORPORATION, a Delaware corporation; and DOES 1-50, | ) **LIABILITY - FAILURE TO** ) **WARN** ) **2. NEGLIGENCE** ) **3. NEGLIGENT** ) **MISREPRESENTATION** |
| Defendants. | ) **4. FRAUD AND INTENTIONAL** ) **MISREPRESENTATION** ) **5. WRONGFUL DEATH** ) ) ) |
| _____ | ) |

**PARTIES, JURISDICTION AND VENUE**

**PLAINTIFF**

1.      At all times relevant to this action, LISA AUSTIN was a resident and citizen of El Cerrito, California located in Contra Costa County. LISA AUSTIN ingested Pradaxa® , resulting in injuries. LISA AUSTIN  died on November 2, 2018 at Stanford Hospital in Stanford, California located in Santa Clara County. LISA AUSTIN is represented herein by Plaintiff JOHN AUSTIN, the authorized successor-in-interest to her Estate. The Declaration of  Plaintiff JOHN AUSTIN, Successor-in-Interest, Pursuant to C.C.P. § 337 .32, is attached hereto as "Exhibit  "A". Plaintiff

1

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   JOHN AUSTIN brings this claim on behalf of LISA AUSTIN's Estate and as LISA AUSTIN

2   surviving family. For the purposes of the additional factual allegations in this complaint below, the

3   word "Plaintiff" refers to the person who ingested Pradaxa® .

4   **MANUFACTURER DEFENDANT**

5   2.   At all relevant times to this action, Defendant BOEHRINGER INGELHEIM

6   PHARMACEUTICALS, INC. ("Boehringer") is a Delaware corporation which has its principal

7   place of business at 900 Ridgebury Road, Ridgefield, Connecticut 06877. Boehringer may be served

8   at CT Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

9   Boehringer has conducted business and derived substantial revenue from within the State of

10   California.

11   3.   At all times relevant to this action, the Manufacturer Defendant was engaged in

12   the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or

13   introducing into interstate Commerce, either directly or indirectly through third parties or related

14   entities, the prescription anticoagulant drug sold under the name Pradaxa®, throughout the State of

15   California.

16   4.   Plaintiff does not know the true names and identities of those defendants

17   designated as DOES 1 through 50, inclusive, but alleges that each of said fictitiously named

18   Defendants, which may include both foreign and/or domestic business entities, is the agent,

19   representative, officer, director, supervisor, managing agent, successor in interest to all other

20   defendants, predecessors in interest to all Defendants, and were negligently and unlawfully

21   responsible for the event herein described, and for the injuries and damages sustained by Plaintiff,

22   and Plaintiff will ask leave of the court to amend this complaint when the identity of each such

23   fictitiously named defendant has been ascertained.

24   **PROMOTER/MARKETER/DISTRIBUTOR DEFENDANT**

25   5.   At all times relevant to this action, Defendant McKESSON CORPORATION

26   ("MCKESSON") was incorporated under the laws of the State of California with its principal place

27   of business at One Post Street, San Francisco, CA 94104.

28

---

2

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

6.     At all times relevant to this action, the Promoter/Marketer/Distributor Defendant was engaged in the business of promoting, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription anticoagulant drug sold under the name Pradaxa®, throughout the State of California (the foregoing individually named Defendants are hereinafter referred to collectively as the "Defendants").

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action under California Code of Civil Procedure § 410.10 and Article VI, § 10 of the California Constitution.

8.     At all times relevant to this action, Venue is proper in the County of San Francisco because the Defendants resided in and/or were located and/or performed business in the County, at the time the acts and events occurred in the State of California.  Thus, venue is proper under California Code of Civil Procedure § 395(a).

## FACTUAL ALLEGATIONS

9.     At all relevant times, Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted, labeled, tested and sold Pradaxa® (dabigatran etexilate mesylate).

10.     Pradaxa® is a direct thrombin inhibitor that is indicated to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation. Patients with atrial fibrillation have an increased risk of stroke.

11.     Pradaxa® was approved by the Food and Drug Administration ("FDA") on October 19, 2010. The FDA approved two dosages: 75 mg and 150 mg, to be taken twice daily. Pradaxa® was the first anticoagulation medication approved in the U.S. in more than 50 years for patients with non-valvular atrial fibrillation.

12.     Prior to the FDA's approval of Pradaxa®, warfarin (sold under the brand name Coumadin®) was the only oral anticoagulation available in the U.S. for reducing stroke and systemic embolism in patients with atrial fibrillation. Unlike patients who use Pradaxa®, users of

3

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   warfarin must follow dietary restrictions and regularly monitor their blood levels (INR) by

2   undergoing blood tests and potentially adjusting the dose of their medication.

3                    **Defendants' Over Promotion of Pradaxa®**

4            13.    Defendants promoted Pradaxa® as a novel medicine for patients with non-

5   valvular atrial fibrillation. Defendants' marketing campaign for Pradaxa® included promoting it as

6   being more effective than warfarin in preventing stroke and systemic embolism, providing a

7   convenient alternative to warfarin therapy because it does not require blood monitoring or dose

8   adjustments, and does not require any dietary restrictions.

9            14.    Defendants spent significant money in promoting Pradaxa®, which included

10  $67,000,000.00 spent during 2010 (although Pradaxa® was not approved for sale until October 19,

11  2010).[1]

12           15.    During 2011, Defendants reportedly undertook 1.5 million Pradaxa® "detailing

13  sessions" (marketing/sales visits by Defendants' sales force) with U.S. primary care physicians,

14  internists, group practitioners, cardiologists, and practice nurses, spending approximately

15  $464,000,000.00 during this 12 month period to promote Pradaxa® in the United States.[2]

16           16.    As part of their marketing of Pradaxa®, Defendants widely disseminated direct-

17  to- consumer advertising campaigns that were designed to influence patients, including Plaintiff, to

18  make inquiries to their prescribing physician about Pradaxa® and/or request prescriptions for

19  Pradaxa®.

20           17.    In the course of these direct-to-consumer advertisements, Defendants overstated

21  the efficacy of Pradaxa® with respect to preventing stroke and systemic embolism, failed to

22  adequately disclose to patients that there is no drug, agent or means to reverse the anticoagulation

23  effects of Pradaxa®, and that such irreversibility could have permanently disabling, life-threatening

24  and fatal consequences. Defendants further failed to adequately disclose to patients that Pradaxa®

25  has a narrow therapeutic window, and that it should be dose-adjusted to patients to minimize their

26  risk of bleeding, despite Defendants' knowledge that patients eliminate Pradaxa® from their bodies

27  _____

28  [1] Deborah Weinstein, Study: Sales Support is Dwindling, Not Dead, March 14, 2012, Medical Marketing and Media.
    [2] *Id.*

1    at different rates, and their knowledge that approximately ten percent of patients are "super

2    absorbers" who eliminate Pradaxa® from their bodies slower than other patients. In addition,

3    Defendants failed to disclose to patients that the risks of Pradaxa® outweigh the benefits in patients

4    80 years of age or older.

5            18.     Prior to Plaintiff's prescriptions of Pradaxa®, Plaintiff became aware of the

6    promotional materials described herein.

7            19.     Prior to prescription of Pradaxa®, Plaintiff's prescribing physicians received

8    promotional materials and information from sales representatives of Defendants that Pradaxa® was

9    more effective than warfarin in reducing strokes in patients with non-valvular atrial fibrillation and

10   was more convenient, without also adequately informing prescribing physicians, including

11   Plaintiff's prescribing physicians, that there was no reversal agent that could stop or control

12   bleeding in patients taking Pradaxa®. Defendants further failed to adequately disclose to

13   prescribing physicians, including Plaintiff's prescribing physicians, that Pradaxa® has a narrow

14   therapeutic window, and that it should be dose-adjusted to patients to minimize their risk of

15   bleeding, despite Defendants' knowledge that patients eliminate Pradaxa® from their bodies at

16   different rates, and their knowledge that approximately ten percent of patients are "super absorbers"

17   who eliminate Pradaxa® from their bodies slower than other patients. In addition, Defendants failed

18   to disclose to physicians that the risks of Pradaxa® outweigh the benefits in patients 80 years of

19   age or older.

20           20.     At all times relevant to this action, Defendants also failed to warn emergency

21   room doctors, surgeons and other critical care medical professionals that unlike generally-known

22   measures taken to treat and stabilize bleeding in users of warfarin, there is no effective agent to

23   reverse the anticoagulation effects of Pradaxa®, and therefore no effective means to treat and

24   stabilize patients who experience uncontrolled bleeding while taking Pradaxa®.

25           21.     At all times relevant to this action, The Pradaxa® Medication Guide, prepared

26   and distributed by Defendants and intended for U.S. patients to whom Pradaxa® has been

27   prescribed, failed to warn and disclose to patients that there is no agent to reverse the anticoagulation

28   effects of Pradaxa® and that if serious bleeding occurs, it may be irreversible, permanently

*Hersh & Hersh*

5
**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

disabling, and life-threatening. The Medication Guide further failed to adequately disclose to patients that Pradaxa® has a narrow therapeutic window, and that it should be dose-adjusted to patients to minimize their risk of bleeding, despite Defendants' knowledge that patients eliminate Pradaxa® from their bodies at different rates, and their knowledge that approximately ten percent of patients are "super absorbers" who eliminate Pradaxa® from their bodies slower than other patients. In addition, Defendants failed to disclose to patients that the risks of Pradaxa® outweigh the benefits in patients 80 years of age or older.

22.     From October 2010 until the end of March 2011, approximately 272, 119 prescriptions for Pradaxa® were written in the United States. During that same period, there were 932 Pradaxa®- associated "Serious Adverse Event" ("SAE") Medwatch reports filed with the U.S. Food and Drug Administration, including at least 120 deaths and over 500 reports of severe, life-threatening bleeding.

23.     From April 1, 2011 until the end of June 2011, there were an additional 856 Pradaxa®- associated "SAE" Medwatch reports filed with the U.S. Food and Drug Administration, including at least 117 deaths and over 510 reports of severe, life-threatening bleeding.

24.     During the Defendants' 2011 fiscal year, worldwide Pradaxa® sales eclipsed the $1billion threshold, achieving what is commonly known- in the pharmaceutical industry as "blockbuster" sales status.[3]

25.     Defendants original labeling and prescribing information for Pradaxa®:

a)  failed to disclose in the "Warnings" Section that there is no drug, agent or means to reverse the anticoagulation effects of Pradaxa®;

b)  failed to advise prescribing physicians, such as the Plaintiff's physicians, to instruct patients that there was no agent to reverse the anticoagulant effects of Pradaxa®;

c)  failed to investigate, research, study and consider, fully and adequately, patient

---

[3] Heide Oberhauser-Aslan and Tapan Shanna, Boehringer Sees Sales Rising Further as 2011 Profits Surge, April 24, 2012 WSJ.com

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

weight as a variable factor in establishing recommended dosages of
Pradaxa®;

d)   failed to investigate, research, study and define, fully and adequately, the safety
profile of Pradaxa®;

e)   failed to provide adequate warnings about the true safety risks associated with the
use of Pradaxa®;

f)   failed to warn that it is difficult or impossible to assess the degree and/or extent of
anticoagulation in patients taking Pradaxa®;

g)   failed to provide for patient-specific dosing, despite Defendants' knowledge that
patients eliminate Pradaxa® from their bodies at different rates, and their
knowledge that approximately ten percent of patients are "super absorbers" who
eliminate Pradaxa® from their bodies slower than other patients;

h)   failed to warn that the risks of Pradaxa® outweigh the benefits in patients 80 years
of age and older;

i)   failed to provide adequate instructions on how to intervene and/or stabilize a patient
who suffers a bleed while taking Pradaxa®;

j)   failed to provide adequate warnings regarding the need to assess renal functioning
prior to starting a patient on Pradaxa® and to continue testing and monitoring
of renal functioning periodically while the patient is on Pradaxa®;

k)   failed to provide adequate warnings and information related to the increased risks
of bleeding events associated with aging patient populations of Pradaxa® users;

l)   failed to provide adequate warnings regarding the increased risk of gastrointestinal
bleeds in those taking Pradaxa®, especially, in those patients with a prior history of
gastrointestinal issues;

m)   failed to include a **"BOXED WARNING"** about serious bleeding events associated
with Pradaxa®;

n)   failed to include a **"BOLDED WARNING"** about serious bleeding events
associated with Pradaxa®; and

7

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

o)   in their "Medication Guide" intended for distribution to patients to whom
Pradaxa® has been prescribed, Defendants failed to disclose to patients that there is
no drug, agent or means to reverse the anticoagulation effects of Pradaxa® and that
if serious bleeding occurs, such irreversibility could have permanently disabling,
life threatening or fatal consequences.

26.   During March, 2011, Defendants modified the U.S. labeling and prescribing information for Pradaxa®, which included additional information regarding the use of Pradaxa® in patients taking certain medications. Despite being aware of: (i) serious, and sometimes fatal, irreversible bleeding events associated with the use of Pradaxa®; (ii) almost 1,800 SAE Med watch reports filed with the U.S. Food and Drug Administration, including at least 237 deaths and over 1,000 reports of severe, life- threatening bleeding, Defendants nonetheless failed to provide adequate disclosures or warnings in their label as detailed in Paragraph 25 (a- o).

27.   On December 7, 2011, the U.S. Food and Drug Administration issued a Drug Safety Communication announcing that it was undertaking a "Drug Safety Review" of Post-Marketing Reports of Serious Bleeding Events with the anticoagulant Pradaxa® . The purpose of the FD A's review is to determine if serious bleeding events associated with the use of Pradaxa® are more common than expected based on the Defendants' data submitted to the FDA.

28.   As of December 31, 2011, the U.S. Food and Drug Administration received over 500 reports of deaths of people in the U.S. linked to Pradaxa® which, at that point, had been available in the U.S. for approximately 14 months. In addition, there were over 900 reports of gastrointestinal hemorrhages, over 300 reports of rectal hemorrhages, and over 200 reports of cerebrovascular accidents suffered by U.S. citizens associated with Pradaxa®.

29.   In January, 2012, the Defendants modified the U.S. labeling and prescribing information for Pradaxa®. Despite being aware of: (i) serious, and sometimes fatal, irreversible bleeding events associated with the use of Pradaxa®; (ii) the July 25, 2011 article in the Archives of Internal Medicine; (iii) the addition of a **"BOXED WARNING"** to Pradaxa® in Japan; (iv) the questions being raised by physicians in New Zealand about serious bleeding events associated with Pradaxa®; and (v)  the Drug Safety

1  Communication published by the FDA in December, 2011, Defendants nonetheless failed to

2  provide adequate disclosures or warnings in their label as detailed in Paragraph 25 (a - o).

3       30.    During March 2012, in response to a directive from Health Canada, the

4  governmental agency responsible for regulating pharmaceuticals in Canada, the

5  Defendants' Canadian affiliate issued a "Dear Healthcare Provider" letter in which it

6  advised Canadian healthcare providers of certain risks associated with the use of Pradaxa®

7  (marketed as Pradaxa® in Canada) in elderly patients and patients with impaired kidney

8  function and prosthetic heart valves. No such similar communication was sent to healthcare

9  providers in the United States.

10       31.    In April 2012, the Defendants modified the U.S. labeling and prescribing

11  information for Pradaxa®. Despite being aware of: (i) serious, and sometimes fatal,

12  irreversible bleeding events associated with the use of Pradaxa®; (ii) the July 25, 2011

13  article in the <u>Archives of Internal Medicine;</u> iii) the addition of a **"BOXED WARNING"** to

14  Pradaxa® in Japan; (iv) the questions being raised by physicians in New Zealand about serious

15  bleeding events associated with Pradaxa®; (v) the Drug Safety Communication published by the

16  FDA in December, 2011; and (vi) the "Dear Healthcare Provider" letter Defendants were required

17  to provide in Canada, Defendants nonetheless failed to provide adequate disclosures or warnings in

18  their label as detailed in Paragraph 25 (a- o).

19       32.    At all times relevant to this action, Defendants failed to warn emergency room

20  doctors, surgeons and other critical care medical professionals that unlike generally-known

21  measures taken to treat and stabilize bleeding that occurs in the presence of warfarin, there is no

22  effective agent to reverse the anticoagulation effects of Pradaxa® and therefore no effective means

23  to treat and stabilize patients who experience uncontrolled bleeding while taking Pradaxa®.

### Plaintiff's Use of Pradaxa® and Resulting Injuries

24       33.    As a result of Defendants' claims regarding the effectiveness, safety, and benefits

25  of Pradaxa®, Plaintiff and their physicians were unaware, and could not have reasonably known or

26  have learned through reasonable diligence that Plaintiff would be exposed to the risk of excessive

27  and/or uncontrollable bleeding and the other risks and injuries described herein.

28

*Hersh & Hersh*

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

34.    Therefore, on December 10, 2017, LISA AUSTIN consulted with Kaiser ED regarding back pain. During her hospital stay, she became hypoxic.  A CTA of the chest revealed pulmonary embolism. On December 12, 2017 she was started on Pradaxa® by Pharmacist Dr. Peter Fowler. She was monitored by the Anti-coagulant Therapy Center.

35.    After the ER visit, Mrs. Austin followed up with her PCP Dr. Dunham. Dr. Dunham told Mrs. Austin she would likely be on Pradaxa® for the rest of her life given her history of carcinoid in the bronchus.

36.    On February 6, 2018, a pulmonary Function Test revealed Mild Restriction in the lungs. This may be compatible with early Interstitial lung disease or obesity (as suggested by low ERV).

37.    On October 15, 2018, Plaintiff presented to Kaiser ER with shortness of breath. Plaintiff was admitted to the hospital.

38.    On October 23, 2018, Plaintiff was transferred to Stanford with a principal diagnosis of Acute hypoxemic respiratory failure.

39.    Plaintiff LISA AUSTIN died on November 2, 2018 from multiorganism failure, respiratory failure, Sepsis, and Idiopathic Lung Disease.

## FIRST CAUSE OF ACTION

### (Strict Products Liability – Failure to Warn)

### (Against All Defendants)

40.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action and further allege as follows:

41.    The Defendants, and each of them, as the manufacturers, distributors, and/ or sellers of PRADAXA® are each held to the level of knowledge of an expert in the field.

42.    At all times relevant to this action, Defendants, and each of them, engaged in the business of designing, manufacturing, testing, marketing, labeling and placing into the stream of commerce Pradaxa® for sale to, and use by members of the public.

43.    At all times Relevant to this action, the dangerous propensity's of Pradaxa® were known to Defendants or were reasonably and scientifically knowable to them, through appropriate

10

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

research and testing by known methods, at the time they distributed, supplied, or sold their respective product, and not known to ordinary physicians who would be expected to prescribe the drug for their patients.

44.    The PRADAXA® manufactured, promoted and distributed by Defendants reached Plaintiff without substantial change and was ingested as directed.

45.    Defendants marketed PRADAXA® in multiple ways, including but not limited to direct to consumer advertisements, which were misleading in that Defendants overstated the safety and efficacy of Pradaxa® and understand its risks.

46.    The PRADAXA® was defective and reasonably dangerous in that the labeling was insufficient to adequately warn physicians and users of the increased risk of excessive and or uncontrollable bleeding.

47.    As a direct and proximate result of the actions of the Defendants, and each of them, and of their failure to warn of the risks associated with the use of PRADAXA®, Plaintiff suffered the consequent injuries and damages as set forth above.

48.    Defendants' actions and omissions as identified in this Complaint show that Defendant acted maliciously and or intentionally disregarded Plaintiff's rights so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## SECOND CAUSE OF ACTION

## NEGLIGENCE

## (AGAINST ALL DEFENDANTS)

49.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action and further allege as follows:

50.    At all relevant times to this action, Defendants, and each of them, owed a duty to the general public and specifically to Plaintiff to exercise reasonable care in the design, study, development, manufacture, promotion, sale, labeling, marketing and distribution of PRADAXA®.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

51.   Defendants breached their duty and failed to exercise reasonable care in the developing, testing, designing, and manufacturing of Pradaxa® registered because it was capable of causing serious personal injuries, such as those suffered by Plaintiff.

52.   Defendants breached their duty and also failed to exercise reasonable care in the marketing of Pradaxa®  because they failed to warn that, as designed, Pradaxa® was capable of causing serious personal injuries, such as those suffered by Plaintiff.

53.   Defendants breached their duty and also failed to exercise ordinary care in the labeling of Pradaxa®  and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Pradaxa®. Moreover, Defendants over promoted the benefits of Pradaxa® for anticoagulation therapy in patients suffering from atrial fibrillation and understand the risk of excessive and/or uncontrollable bleeding.

54.   Defendants breached their duty and were negligent by, but not limited to, the following actions, misrepresentations, and omissions toward  Plaintiff:

a)  In disseminating information to Plaintiff and their physicians that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to patients such as Plaintiff;

b)   Failing to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Pradaxa®;

c)  Failing to design and/or manufacture a product that could be used safely due to the lack of a known reversal agent; and

d)  In designing, manufacturing, and placing into the stream of commerce a product that was unreasonably dangerous for its reasonably foreseeable use, which Defendants knew or should have known could cause injury to Plaintiff.

55.   Despite the fact that Defendants knew or should have known that Pradaxa®; it posed a serious risk of bodily harm and death to consumers and or did not provide any additional benefits, defendants continued to manufacture and market Pradaxa® for use by consumers.

12

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

56.     Defendants knew or should have known that consumers, including Plaintiff, would forcibly suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

57.     Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, labeling, and/or manufacturing of Pradaxa® was a proximate cause of Plaintiff's subsequent injuries and damages.

58.     Defendants' conduct as described above, including but not limited to its failure to adequately test Pradaxa®, to provide adequate warnings, and its continued manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences actions and/or intentional disregard of the rights of the Plaintiff so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

### THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
### (AGAINST ALL DEFENDANTS)

59.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action and further allege as follows:

60.     Defendants, in the course of its business profession, knowingly and negligently supplied Plaintiff, their physicians, and the FDA with false information through Defendants' written literature and representations by sales agents for guidance in the physicians' and the patient's decision to use and/or approve Pradaxa®.

61.     Defendants represented that Pradaxa® was just as safe or safer and as effective or more effective than other anticoagulation alternatives and had additional benefits compared to other anticoagulation medications available on the market.

62.     Defendants made these misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that Pradaxa® had defects, dangers, and characteristics that were other than what Defendants had represented to Plaintiff and the health care industry generally. Specifically, Defendants misrepresented to and/or actively concealed from Plaintiff, and the consuming public, among other things, that:

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

a) Pradaxa® had statistically significant increases in irreversible bleeds and other side effects which could result in serious, permanent injury or death;

b) Pradaxa® had not been fully or adequately tested;

c) Pradaxa® does not have any known reversal agents;

d) Pradaxa® bleeds cannot be stopped or controlled by any effective medical processes or medical intervention;

e) It is difficult or impossible to assess the degree and/or extent of anticoagulation in patients taking Pradaxa®;

f) Pradaxa should be dosed individually for patients because patients eliminate Pradaxa® from their bodies at different rates, and approximately ten percent of patients are "super absorbers" who eliminate Pradaxa® from their bodies slower than other patients;

g) The risks of Pradaxa® outweigh the benefits in patients 80 years of age and older; and

h) Pradaxa® was not as safe as blood thinners such as warfarin.

63.     Defendants negligently and/or intentionally misrepresented or omitted this information in their product labeling, promotions and advertisements and instead labeled, promoted and advertised their product as safer and more effective than other types of anticoagulation alternatives, and understated the risk of excessive and/or uncontrollable bleeding associated with Pradaxa®.

64.     The aforementioned misrepresentations were untrue and misleading.

65.     Defendants knew or should have known that these representations were false and made the representations with the intent that Plaintiff and/or their prescribing physicians would rely on them, leading to the use of Pradaxa®.

66.     In willfully supplying the false information, Defendants negligently failed to exercise reasonable care in obtaining or communicating information to Plaintiff, their physicians, and the FDA.

67.     At the time of Defendants' fraudulent misrepresentations, Plaintiff and/or their prescribing physicians were unaware of the falsity of the statements being made and believed them to be true. Plaintiff and/or their prescribing physicians justifiably relied on and/or were induced by the misrepresentations and/or active concealment, and relied on the absence of safety information, which Defendants did suppress, conceal or failed to disclose, to Plaintiff's detriment.

14

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

68.     The false information obtained and communicated by Defendants to Plaintiff, their physicians, and the FDA was material and upon which Plaintiff and the medical community justifiably relied in good faith to their detriment.

69.     As a direct and proximate result of the negligent misrepresentations of Defendants, Plaintiff suffered injuries, including personal injuries, economic and non-economic damages, including pain and suffering.

70.     Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION

## FRAUD AND INTENTIONAL MISREPRESENTATION

## (AGAINST ALL DEFENDANTS)

71.     Plaintiff incorporates by reference each and every paragraph of this Complaint as thoughset forth in this cause of action and further allege as follows:

72.     Defendants knowingly, willfully, and intentionally made material, false, fraudulent, and misleading misrepresentations through their written literature and through their sales representatives to Plaintiff, their physicians, and to the public that Pradaxa® was safe for its prescribed use and that Defendants' labeling, marketing and promotion fully and adequately described, informed, and warned of all known risks of the product.

73.     Defendants' misrepresentations were in fact false and fraudulent, as Pradaxa® is not safe for its intended use and its labeling, marketing, and promotion did not adequately describe, inform, or warn the medical community and patients of all known risks of the product.

74.     Defendants had or should have had actual knowledge and information based upon studies, published reports, and clinical experience that its product Pradaxa® created an unreasonable risk of serious bodily injury and death to consumers, when used by patients as directed by Defendants.

75.     Defendants knowingly, willfully, and intentionally concealed the true information regarding the risks of harm created by their product in the product labeling, marketing, and promotion and instead, labeled, promoted and marketed their product as safe for use in order to avoid monetary losses and in order to sustain profits in sales to consumers.

15

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

76.     When Defendants made these misrepresentations that Pradaxa® was safe and effective for its intended use, Defendants knowingly, willfully, and intentionally concealed and withheld from Plaintiff, their physicians, and the public the true facts known by Defendants that Pradaxa® is not safe 2 for its intended and prescribed use and purpose.

77.     Defendants had a duty to disclose to Plaintiff, their physicians, and the public, that Pradaxa® was not safe in that it can cause serious uncontrollable bleeding events and death, because Defendants had superior knowledge of these facts that were material to Plaintiff's and their physicians' decision to use Pradaxa®.

78.     Plaintiff and their physicians reasonably and justifiably relied upon Defendants' intentional concealment of the true facts, and reasonably and justifiably relied upon Defendants' misrepresentations to Plaintiff and their health care providers that Pradaxa® was safe and that Defendants' labeling, marketing and promotion fully and adequately described, warned, and informed all known risks of the product.

79.     Had Plaintiff and their physicians known of Defendants' intentional and fraudulent concealment of the true facts that Pradaxa® was not safe for human use, Plaintiff's healthcare providers would not have prescribed Plaintiff with Pradaxa® and Plaintiff would not have agreed to have used Pradaxa® as directed by Defendants.

80.     As a direct and proximate result of Defendants' fraudulent misrepresentations and intentional concealment, Plaintiff were prescribed and used Pradaxa® as instructed by Defendants, and suffered injuries, and the Plaintiff have suffered, and will continue to suffer, economic damages, losses.

81.     Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## FIFTH CAUSE OF ACTION

## WRONGFUL DEATH

### (Against All Defendants)

82.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action and further allege as follows:

83.     The acts, conduct, and omissions of Defendants were willful and malicious and were done with a conscious disregard for the health, safety, and rights of Plaintiff, and other foreseeable users of the

16

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

pharmaceutical agents identified in this Complaint, and for the primary purpose of increasing Defendants' profits from the sale and distribution of their drug product, Pradaxa®. The outrageous and unconscionable conduct of Defendants, as set forth herein, warrants an award of exemplary and punitive damages against Defendants, and each of them, pursuant to Civil Code § 3294, exemplary and punitive damages against Defendants, and each of them, pursuant to Civil Code § 3294, in an amount appropriate to punish and make an example of each Defendant.

84.     Prior to the manufacturing, sale, promotion and distribution of Pradaxa®, Defendants knew that Pradaxa® was in a defective condition as previously described herein and knew that those who were prescribed and the foreseeable users who took them would experience and did experience severe and permanent physical, mental, and emotional and economic injuries. Further, Defendants, through their officers, directors, managers and agents, had knowledge that Pradaxa® presented a through their officers, directors, managers and agents, had knowledge that Pradaxa® presented a substantial and unreasonable risk of harm to the public, including Plaintiff and, as such, said purchasers and/or consumers of Pradaxa® were unreasonably subjected to risk of a serious bleeding event from the consumption of said drug.

85.     Despite such knowledge, Defendants, acting through their officers, directors and managing agents for the purpose of enhancing their profits, knowingly and deliberately failed to remedy the known defects of Pradaxa® and failed to warn any and all persons who prescribed, purchased or consumed Defendants' anticoagulation drug product, including but not limited to, any and all physicians and foreseeable users of Pradaxa®, of the extreme and dangerous risks associated with the foreseeable uses of their pharmaceutical product and its defective nature. Defendants, as well as their individual agents, officers, and directors intentionally proceeded with the manufacturing, packaging, labeling, distribution, marketing and sale of Pradaxa® knowing that foreseeable users would be exposed to serious potential danger in order to advance Defendants' own pecuniary interest and monetary profits. The conduct of Defendants, and each of them, was despicable, and so contemptuous that it would be looked down upon and despised by ordinary decent people, and carried on by Defendants with willful and conscious disregard for the safety of Plaintiff to exemplary damages under Civil Code § 3294.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## PRAY FOR RELIEF

WHEREFORE, Plaintiff pray for relief on the entire Complaint, as follows:

a)   Judgment be entered against all Defendants on all causes of action of this Complaint;

17

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

b) Plaintiff be awarded their full, fair, and complete recovery for all claims and causes of action relevant to this action;

c) Plaintiff be awarded all appropriate costs, attorneys' fees, expenses, and prejudgment and post judgment interest, as authorized by law on the judgments, which are entered in Plaintiff's behalf; and

d) Such other relief the Court deems as just and appropriate.

**WHEREFORE**, Plaintiff, pray for judgment against the Defendants, and each of them, as follows:

### AS TO THE FIRST CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY - FAILURE TO WARN:

1. General damages according to proof at the time of trial;

2. Medical and other special damages according to proof at the time of trial;

3. Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4. For pre-judgment and post-judgment interest as followed by the laws of the State of California;

5. For punitive and exemplary damages;

6. Costs of suit incurred herein; and

7. For such other and further relief as the Court may deem just and proper.

### AS TO THE SECOND CAUSE OF ACTION FOR NEGLIGENCE:

1. General damages according to proof at the time of trial;

2. Medical and other special damages according to proof at the time of trial;

3. Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4. For pre-judgment and post-judgment interest as followed by the laws of the State of California:

5. Costs of suit incurred herein; and

6. For such other and further relief as the Court may deem just and proper.

### AS TO THE THIRD CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

1. General damages according to proof at the time of trial;

18

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

2. Medical and other special damages according to proof at the time of trial;

3. Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4. For pre-judgment and post-judgment interest as followed by the laws of the State of California

5. Costs of suit incurred herein; and

6. For such other and further relief as the court may deem just and proper.

**AS TO THE FOURTH CAUSE OF ACTION FOR FRAUD AND INTENTIONAL MISREPRESENTATION:**

1. General damages according to proof at the time of trial;

2. Medical and other special damages according to proof at the time of trial;

3. Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4. For pre-judgment and post-judgment interest as followed by the laws of the State of California;

5. For punitive and exemplary damages;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE FIFTH CAUSE OF ACTION FOR WRONGFUL DEATH:**

1. General damages according to proof at the time of trial;

2. Medical and other special damages according to proof at the time of trial;

3. Economic damages for loss of financial support, gifts, benefits, household services, and funeral and burial expenses, according to proof at the time of trial;

4. Non-economic damages for loss of love, companionship, comfort, care, assistance, protection, affection society, moral support, training, and guidance, according to proof at the time of trial;

5. For pre-judgment and post-judgment interest as followed by the laws of the State of California;

6. For punitive and exemplary damages;

7. Costs of suit incurred herein; and

19

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    8. For such other and further relief as the Court may deem just and proper.

2    **DEMAND FOR JURY TRIAL**

3    Plaintiff hereby demands a trial by jury on all issues so triable.

4

5

6

7    Date:November 2, 2020

8                                        By:_____*John Austin*_____
                                                      JOHN AUSTIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      20
                    **COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

# EXHIBIT A

JOHN AUSTIN
6537 KNOTT AVE.
EL CERRITO, CA 94530
Phone: 510-508-3138
Email: jaustins44@gmail.com

IN PRO PER

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

### IN AND FOR THE COUNTY OF SAN FRANCISCO COUNTY

### UNLIMITED JURISDICTION

| | |
|---|---|
| JOHN AUSTIN, as successor-in-interest to LISA AUSTIN and as an individual, | CASE NO: |
| Plaintiff, | Exhibit A to Complaint **DECLARATION OF JOHN AUSTIN, SUCCESSOR-IN-INTEREST, PURSUANT TO C.C.P. §377.32** |
| vs. | |
| BOEHRINGER INGELHEIM, a corporation; McKESSON CORPORATION, a Delaware corporation; and DOES 1-50, | |
| Defendants. | |

I, JOHN AUSTIN, hereby declares as follows:

1. I am over the age of 18 years and the surviving spouse of Decedent, LISA AUSTIN.

2. I make this declaration pursuant to Code of Civil Procedure Section 377.32 to allow me to commence any and all actions related to Decedent's ingestion of Pradaxa, which survive her death.

3. The name of the Decedent is LISA AUSTIN.

4. Decedent died at Stanford, California on November 2, 2018.

1
DECLARATION OF JOHN AUSTIN, SUCCESSOR-IN-INTEREST, PURSUANT TO C.C.P. §377.32

Hersh & Hersh

5. No proceeding is now pending in California for the administration of Decedent's estate.

6. The Declarant is the authorized successor-in-interest (as defined in §377.11 of the California Code of Civil Procedure) to Decedent and Succeeds to the Decedent's interest in the action or proceeding.

7. No other person has a superior right to commence and or continue the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

8. A copy of Decedent's death certificate is attached.

9. I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct. Executed on _Oct. 31_  2020, in _EL CERRITO_ , California.

**JOHN AUSTIN**
Declarant

2

**DECLARATION OF JOHN AUSTIN, SUCCESSOR-IN-INTEREST, PURSUANT TO C.C.P. §377.32**

Hersh & Hersh



STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

# COUNTY of SANTA CLARA
## PUBLIC HEALTH DEPARTMENT
## VITAL RECORDS AND REGISTRATION

CERTIFICATE OF DEATH — 3201843009105

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| LISA | ANN | AUSTIN |

| AKA, ALSO KNOWN AS | 6. DATE OF BIRTH mm/dd/ccyy | 7. AGE Yrs. | 8. SEX |
|---|---|---|---|
| | 12/24/1964 | 53 | F |

8. BIRTH STATE/FOREIGN COUNTRY: CA
10. SOCIAL SECURITY NUMBER: 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
11. EVER IN US. ARMED FORCES?: X NO
12. MARITAL STATUS: MARRIED
13. DATE OF DEATH: 11/02/2018 — 1814

14/15. EDUCATION: ASSOCIATE
15. WAS DECEDENT HISPANIC/LATINO/A/SPANISH?: X NO
16. DECEDENT'S RACE: CAUCASIAN

17. USUAL OCCUPATION: CATERER
18. KIND OF BUSINESS OR INDUSTRY: CATERING
19. YEARS IN OCCUPATION: 10

20. DECEDENT'S RESIDENCE: 6537 KNOTT AVE.
21. CITY: EL CERRITO
22. COUNTY/PROVINCE: CONTRA COSTA
23. ZIP CODE: 94530
24. YEARS IN COUNTY: 53
25. STATE/FOREIGN COUNTRY: CA

26. INFORMANT'S NAME, RELATIONSHIP: JOHN AUSTIN, HUSBAND
27. INFORMANT'S MAILING ADDRESS: 6537 KNOTT AVE, EL CERRITO, CA 94530

28. NAME OF SURVIVING SPOUSE/SDP—FIRST: JOHN
29. MIDDLE
30. LAST (BIRTH NAME): AUSTIN

31. NAME OF FATHER/PARENT—FIRST: RALPH
32. MIDDLE
33. LAST: WILSON
34. BIRTH STATE: AL

35. NAME OF MOTHER/PARENT—FIRST: GLADYS
36. MIDDLE
37. LAST (BIRTH NAME): VAUGHN
38. BIRTH STATE: OK

39. DISPOSITION DATE: 11/09/2018
40. PLACE OF FINAL DISPOSITION: SUNSET VIEW CEMETERY, 101 COLUSA AVE, EL CERRITO, CA 94530

41. TYPE OF DISPOSITION: BU
42. SIGNATURE OF EMBALMER: TARYN CYR
43. LICENSE NUMBER: EMB9287

44. NAME OF FUNERAL ESTABLISHMENT: SUNSET VIEW CEMETERY ASSOCIATION
45. LICENSE NUMBER: FD1079
46. SIGNATURE OF LOCAL REGISTRAR: SARA H CODY, MD
47. DATE: 11/07/2018

101. PLACE OF DEATH: STANFORD HOSPITAL
102. IF HOSPITAL, SPECIFY ONE: X IP
103. IF OTHER THAN HOSPITAL, SPECIFY ONE

104. COUNTY: SANTA CLARA
105. FACILITY ADDRESS: 300 PASTEUR DR
106. CITY: STANFORD

107. CAUSE OF DEATH

| | | Time interval | 108. DEATH REPORTED TO CORONER? X NO |
|---|---|---|---|
| IMMEDIATE CAUSE (A) | MULTISYSTEM ORGAN FAILURE | WKS | |
| (B) | RESPIRATORY FAILURE | WKS | 109. BIOPSY PERFORMED? X NO |
| (C) | SEPSIS | WKS | 110. AUTOPSY PERFORMED? X YES |
| (D) | IDIOPATHIC LUNG DISEASE | WKS | 111. USED IN DETERMINING CAUSE? X NO |

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107: HISTORY OF PULMONARY EMBOLISM

113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112?: NO
114. IF FEMALE, PREGNANT IN LAST YEAR?: X NO

115. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
Decedent Attended Since: 10/23/2018
Decedent Last Seen Alive: 11/02/2018

116. SIGNATURE AND TITLE OF CERTIFIER: Y. YASUHIRO SHUDO M.D.
117. PRINT NAME: Y. YASUHIRO SHUDO M.D.
118. LICENSE NUMBER: A153748
119. DATE: 11/06/2018

116B. PHYSICIAN'S ADDRESS: 300 PASTEUR DRIVE, STANFORD, CA 94305

119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
120. MANNER OF DEATH
121. INJURY DATE
122. HOUR

123. PLACE OF INJURY
124. DESCRIBE HOW INJURY OCCURRED
125. LOCATION OF INJURY
126. SIGNATURE OF CORONER / DEPUTY CORONER
127. DATE
128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER

STATE REGISTRAR | A | B | C | D | E | — FAX AUTH. — CENSUS TRACT

*01001004030405*



## CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA } SS.
DATE ISSUED: 11/16/2018
By

*H3330329*

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL RECORDS SECTION, DEPARTMENT OF PUBLIC HEALTH.



SARA H. CODY
HEALTH OFFICER AND LOCAL REGISTRAR
OF BIRTHS AND DEATHS

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|
| John Austin, In Pro Per<br>6537 KNOTT AVE., EL CERRITO, CA 94530<br><br>TELEPHONE NO.: 510-508-3138     FAX NO. (Optional):<br>ATTORNEY FOR (Name): In Pro Per | **F I L E D**<br>Superior Court of California<br>County of San Francisco<br><br>NOV 0 2 2020<br><br>CLERK OF THE COURT<br>BY: _____<br>Deputy Clerk<br>ANGELICA SUNGA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS: 400 McAllister St.
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
AUSTIN v. BOEHRINGER INGELHEIM, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] **Unlimited**<br>(Amount demanded exceeds $25,000) | [ ] **Limited**<br>(Amount demanded is $25,000) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | **CGC-20-587448**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[x] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): Five (5)
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: 11/2/2020                                                                *By Fax*

JOHN AUSTIN
_____                       ► *John Austin*
(TYPE OR PRINT NAME)                                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET.                                                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **APR-07-2021**

**TIME:** **10:30AM**

**PLACE:** **Department 610**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400 McAllister Street, Room 103-A**
**San Francisco, CA 94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

| | |
|---|---|
| JOHN AUSTIN<br><br>PLAINTIFF (S)<br><br>VS.<br><br>BOEHRINGER INGELHEIM, A CORPORATION et al<br><br>DEFENDANT (S) | **Case Management Department 610**<br>**Case Management Order**<br><br><br>**NO. CGC-20-587448**<br><br>**Order Continuing Case Management Conference** |

TO: ALL COUNSEL AND SELF-REPRESENTED LITIGANTS

The Apr-07-2021 CASE MANAGEMENT CONFERENCE is canceled, and it is hereby ordered:

This case is set for a case management conference on Aug-04-2021 in Department 610 at 10:30 am.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than fifteen (15) days before the case management conference.  However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed and served twenty-five (25) days before the case management conference.

PLAINTIFF(S) must serve a copy of this notice on all parties not listed on the attached proof of service within five (5) days of the date of this order.

DATED:  MAR-18-2021                    SAMUEL K. FENG
_____

JUDGE OF THE SUPERIOR COURT

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on MAR-18-2021 I served the attached Order Continuing Case Management Conference by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.


Dated :  MAR-18-2021                              By: VANESSA WU



JOHN AUSTIN
6537 KNOTT AVE.
EL CERRITO, CA  94530

CERTIFICATE OF SERVICE BY MAIL
Form 000001

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

| | |
|---|---|
| JOHN AUSTIN<br><br><br>PLAINTIFF (S)<br><br>VS.<br><br>BOEHRINGER INGELHEIM, A CORPORATION<br>et al<br><br><br>DEFENDANT (S) | **Case Management Department 610**<br>**Case Management Order**<br><br><br>**NO. CGC-20-587448**<br><br>**Order Continuing Case**<br>**Management Conference** |

TO: ALL COUNSEL AND SELF-REPRESENTED LITIGANTS

The Aug-04-2021 CASE MANAGEMENT CONFERENCE is canceled, and it is hereby ordered:

This case is set for a case management conference on Dec-08-2021 in Department 610 at 10:30 am.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than fifteen (15) days before the case management conference.  However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed and served twenty-five (25) days before the case management conference.

PLAINTIFF(S) must serve a copy of this notice on all parties not listed on the attached proof of service within five (5) days of the date of this order.

DATED:  JUL-16-2021                         SAMUEL K. FENG
_____

JUDGE OF THE SUPERIOR COURT

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on JUL-16-2021 I served the attached Order Continuing Case Management Conference by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.

Dated :  JUL-16-2021                          By: VANESSA WU

JOHN AUSTIN
6537 KNOTT AVE.
EL CERRITO, CA  94530

CERTIFICATE OF SERVICE BY MAIL
Form 000001

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

JOHN AUSTIN

PLAINTIFF (S)

VS.

BOEHRINGER INGELHEIM, A CORPORATION et al

DEFENDANT (S)

**Case Management Department 610**
**Case Management Order**

**NO.: CGC-20-587448**

**Order To Show Cause**

TO: PLAINTIFF'S COUNSEL AND/OR SELF-REPRESENTED PLAINTIFF(S)

The Dec-08-2021 CASE MANAGEMENT CONFERENCE is canceled.

YOU ARE HEREBY ORDERED TO APPEAR in Department 610 on Feb-08-2022 at 10:30 am, pursuant to Local Rule 3.0 C to show cause why this action should not be dismissed or why sanctions should not be imposed for failure to:

file proof of service on defendant(s) and obtain answer(s), or enter default(s).

CRC 3.110(i) requires that responsive papers to an order to show cause must be filed and served at least 5 calendar days before the hearing.

However, it would facilitate the issuance of a case management order prior to the Order to Show Cause hearing if the Response to Order to Show Cause is filed and served twenty (20) days before the Order to Show Cause hearing.

PLAINTIFF(S) must serve a copy of this notice on all parties not listed on the attached proof of service within five (5) days of the date of this order.

You may call (415) 551-4000 after 12:00 noon the day before the hearing to determine whether your compliance has taken the order to show cause off calendar.

DATED: NOV-16-2021

SAMUEL K. FENG

JUDGE OF THE SUPERIOR COURT

Order To Show Cause
Form 000001

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on NOV-16-2021 I served the attached Order To Show Cause by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.

Dated :  NOV-16-2021                              By: GINA GONZALES

JOHN AUSTIN
6537 KNOTT AVE.
EL CERRITO, CA  94530

CERTIFICATE OF SERVICE BY MAIL
Form 000001